UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

MELVINA COOK
     Plaintiff,

 -vs-                             Case No.
                                   Hon.

NCO FINANCIAL SYSTEMS, INC.
DTE ENERGY,
     Defendants.

## COMPLAINT & JURY DEMAND

*Melvina  Cook states  the following claims for relief:*

### Jurisdiction

1.     This court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331,1337.

2.     This court may exercise supplemental jurisdiction over the related Federal law claim under the Telephone Consumer Protection Act of 1991 ("TCPA"),  47 U.S.C. 227 *et seq.,* and state law claims arising out of the same nucleus of operative facts which give rise to the FDCPA claims.

### Parties

3.     The Plaintiff to this lawsuit is Melvina Cook who resides in Detroit, Michigan.

4.     The Defendants to this lawsuit are as follows:

     a.     NCO Financial Systems, Inc. ("NCO") which is a corporation doing business in Michigan.

     b.     DTE Energy ("DTE") which is a corporation doing business in Michigan.

1

## Venue

5.   The transactions and occurrences which give rise to this action occurred in Wayne County

6.    Venue is proper in the Eastern District of Michigan.

## General Allegations

7.   Upon information and belief, Diane Jackson was a customer of DTE with an overdue account.

8.   In 2008,  DTE began calling Ms. Cook's cell phone to collect on the Jackson account.

9.   In those communications, DTE used an automatic telephone dialing system to place the calls.

10.   DTE used an artificial or prerecorded voice when it called Ms. Cook's cell phone.

11.   In the communications, the artificial and/or prerecorded voice stated that Diane Jackson had an overdue bill and that she should contact DTE.

12.   After receiving numerous calls and messages from DTE, Ms. Cook called DTE.

13.   She informed DTE that she was not Diane Jackson and demanded that it stop calling her cell phone.

14.   Shortly thereafter, DTE engaged NCO to collect the Jackson account.

15.   DTE knew that Ms. Cook was not the debtor on the account.

16.   DTE knew that Ms. Cook did not want collection calls on the account placed to her cell phone.

17.   Despite that knowledge, DTE transferred Ms. Cook's cell phone number to NCO as part of the collection file.

18.   At the end of 2008, NCO began calling Ms. Cook's cell phone  to collect the Jackson account.

2

19.   NCO acted on behalf of DTE.

20.   Throughout 2009, NCO called Ms. Cook every single day except Thanksgiving, and up to five times a day.

21.   In each of these calls to Ms. Cook's cell phone, NCO used an automatic telephone dialing system to place the call.

22.   In each of these calls to Ms. Cook's cell phone, NCO used an artificial or prerecorded voice to communicate a message.

23.   In each of these calls to Ms. Cook's cell phone, NCO did not identify itself as the caller. Rather, it falsely left the impression that it was DTE that had called.

24.   NCO communicated the following via artificial or prerecorded voice technology when Ms. Cook answered the phone or to Ms. Cook's voicemail box:

This is notice from DTE Energy for (inaudible) Jackson or the person responsible for the energy service account at 4674 Allendale Street. Please contact us at 1(866) 804-1387.

25.   Alternatively, the message was as follows, or another variant of this message:

This is an URGENT notice from DTE Energy for (inaudible) Jackson or the person responsible for the energy service account at 4674 Allendale Street. Please contact us at 1(866) 804-1387. Again that number is 1(866) 804-1387. Thank you from DTE Energy.

26.   The use of the words "Urgent" conveyed a false sense of urgency regarding the account to Ms. Cook .

27.   NCO caused Ms. Cook's telephone to ring repeatedly and/or continuously with the intent to annoy, abuse or harass Ms. Cook

28.   In each of those calls, NCO failed to meaningfully disclose its identity in violation of 15 U.S.

3

C. § 1692d(6).

29.     The telephone calls were annoying, distressing and embarrassing for Ms. Cook as they were so numerous and came at inconvenient hours of the day.

30.     Further, the calls were frustrating because NCO offered no prompt or option by which the person it had called could be connected with a person.

31.     At a certain point, frustrated by her inability to talk to NCO and tell it to stop calling, Ms. Cook stopped answering NCO's calls.

32.     In December 2009, Ms. Cook returned the phone call at the number left by NCO in order to tell NCO to stop calling her.

33.     The number left by NCO connected Ms. Cook to an automated phone answering system that requested that she enter the phone number where she had received the  message.

34.     When Ms. Cook entered her cell phone number, NCO's automated answering system indicated it did not recognize her number.

35.     It then indicated that she should enter the phone number where she had originally received the message.

36.     Ms. Cook again input her cell phone number.

37.     NCO's system rejected the number and then stated she should try later with the phone number associated with the energy account.

38.     Ms. Cook did not have an account with DTE and could not input any such number.

39.     NCO's automated answering system  provided no prompts or means to connect to a person.

40.     Ms. Cook then attempted to reach NCO at the number identified with NCO on her caller ID.

41.     This number similarly connected Ms. Cook to an automated phone answering system that

4

requested that she enter the phone number where she had received the message.

42.     She entered her cell phone number.

43.     The automated phone system placed her in a loop which indicated that it did not recognize her cell phone number.

44.     Further, NCO's automated answering system provided no prompts or means to connect to a person.

45.     NCO then directed her to call later or to call 1(800) 477- 4747.

46.     Ms. Cook called 1(800) 477-4747.

47.     Ms. Cook was connected to DTE.

48.     DTE's representative stated that NCO did collections for it on accounts with overdue balances.

49.     Ms. Cook told DTE that she was not the person on the account and that NCO had been calling her cell phone.

50.     Ms. Cook further demanded that NCO stop calling her.

51.     NCO called the very next day.

52.     NCO placed the call using an automated telephone dialer.

53.     NCO used an artificial or prerecorded voice when it called Ms. Cook's cell phone.

54.     Ms. Cook never gave NCO permission to call her cell phone number.

55.     Ms. Cook never gave DTE permission to call her cell phone number.

## COUNT I – Fair Debt Collection Practices Act (NCO)

56.     Ms. Cook incorporates the preceding allegations by reference.

57.     At all relevant times NCO – in the ordinary course of its business – regularly engaged in the

5

practice of collecting debts on behalf of other individuals or entities.

58.   NCO is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

59.   At all times relevant to this complaint, NCO sought to collect a "consumer" debt.

60.   NCO's actions violated the provisions of the FDCPA.

61.   Ms. Cook has suffered damages as a result of these violations of the FDCPA.

### COUNT  II  – Telephone Consumer Protection Act of 1991 ("TCPA")(NCO)

62.   Ms. Cook incorporates the preceding allegations by reference.

63.   The acts and omissions of the NCO and its representatives, employees and/or agents constitute numerous and multiple violations of the TCPA, including but not limited to 47 U.S.C. § 227(b)(1)(A)(iii).

64.   NCO's violations are multiple, wilful and intentional.

65.   Pursuant to the TCPA, 47 U.S.C. § 227(b)(3)(B), Ms. Cook is entitled to statutory damages of $500.00 per violation.

66.   Pursuant to TCPA, 47 U.S.C. §§ 227(b)(3), Ms. Cook is entitled to statutory damages of $1,500.00 per wilful or knowing violation.

### COUNT  III  – Telephone Consumer Protection Act of 1991  (DTE)

67.   Ms. Cook incorporates the preceding allegations by reference.

68.   The acts and omissions of the DTE and its representatives, employees and/or agents constitute numerous and multiple violations of the TCPA, including but not limited to 47 U.S.C. § 227(b)(1)(A)(iii).

69.   DTE's violations are multiple, wilful and intentional.

6

70.     Pursuant to TCPA 47 U.S.C. § 227(b)(3)(B), Ms. Cook is entitled to statutory damages of $500.00 per violation.

71.     Pursuant to the TCPA 47 U.S.C. §§ 227(b)(3) and (b)(3), Ms. Cook is entitled to statutory damages of $1,500.00 per wilful or knowing violation.

### COUNT IV – Michigan Occupational Code (NCO)

72.     Ms. Cook incorporates the preceding allegations by reference.

73.     NCO is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

74.     Ms. Cook is a debtor as that term is defined in M.C.L. § 339.901(f).

75.     NCO 's foregoing acts in attempting to collect this alleged debt against Ms. Cook constitute violations of the MOC including but not limited to the following, M.C.L. § 339.915(g), (n), (q).

76.     Ms. Cook has suffered damages as a result of these violations of the MOC

77.     These violations of the MOC were willful.

### COUNT VI – Michigan Collection Practices Act (DTE)

78.     Ms. Cook incorporates the preceding allegations by reference.

79.     DTE is a regulated person for purposes of the Michigan Collection Practices Act, M.C.L. §445.251 *et seq.* ("MCPA").

80.     DTE has violated  the MCPA.

81.     Ms. Cook  has suffered damages as a result of these violations of the MCPA.

### Demand for Jury Trial

82.     Ms. Cook demands trial by jury in this action.

### Demand For Judgment for Relief

83.     *Accordingly, Ms. Cook requests that the Court grant:*

a.      *Equitable relief under statute and common law, in the form of a declaration that the amount sought by Defendants is not actually owed and an injunction prohibiting further collection of those amounts from Ms. Cook.*

b.      *Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.*

c.      *Statutory damages.*

d.      *Treble damages.*

e.      *Statutory costs and attorney fees.*

Respectfully Submitted,


By:  s/ Julie A. Petrik
Julie A. Petrik (P47131)
LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Attorney For Melvina Cook
24500 Northwestern Highway, Ste. 206
Southfield, MI 48075
(248) 208-8864
JuliePetrik@Att.Net

Dated: January 12, 2010

8